UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. MACKENZIE LERARIO,

                    Plaintiff,

        - against -

NEWYORK-PRESBYTERIAN/QUEENS, ET
AL.,

                  Defendants.

20-cv-6295 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

      The plaintiff, Dr. Mackenzie Lerario, brought this action against the defendants, NewYork-Presbyterian/Queens ("NYP"), Cornell University ("Cornell"), and Dr. Matthew Fink alleging a hostile work environment, failure to accommodate, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Americans with Disabilities Act, 42 U.S.C § 12101 et seq. ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"). In an Order dated February 28, 2022, this Court granted in part and denied in part the defendants' motions to dismiss. See ECF No. 71. Of particular relevance, the Court dismissed the plaintiff's retaliation claim without prejudice to the plaintiff's ability to file an amended complaint.

The plaintiff has now filed a Fourth Amended Complaint (the "Complaint"), ECF No. 87, reasserting her claim of retaliation under the NYCHRL against all defendants. While NYP has answered the Complaint, Cornell and Fink have filed a motion to dismiss the plaintiff's NYCHRL retaliation claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is **denied**.

## I.

The following facts are taken from the plaintiff's Complaint. The plaintiff, Dr. Mackenzie Lerario, is a medical doctor. Compl. ¶ 26. On July 1, 2015, Lerario was employed by Weill Cornell Medical Center and Weill Cornell Medical College ("Weill"), which are owned and operated by Cornell. Id. ¶¶ 3, 32. Lerario was then contracted to work at NYP, a medical facility, through a medical services agreement ("MSA") between NYP and Weill. Id. ¶¶ 32, 50.

Lerario worked at both NYP and Weill as a neurologist. Id. ¶¶ 32-34. While Weill was Lerario's formal employer, NYP paid a portion of Lerario's salary through Weil, afforded Lerario a facility in which to practice medicine, gave Lerario the medical tools and instrumentalities to practice medicine, and hired medical and non-medical personnel to assist and support Lerario's medical practice. Id. ¶¶ 37-38, 43-44, 48. NYP also had the right to assign projects to Lerario and, through its

poliies and procedures, controlled when and how long Lerario worked. Id. ¶¶ 46-47. On January 1, 2016, Lerario became the Site Director of the Neurology Clerkship at NYP. Id. ¶ 32.

In 2018, Fink became the plaintiff's supervisor. Id. ¶¶ 61-62. Fink is the Chair of Neurology at Weill Cornell Medical College and Neurologist-in-Chief at NYP and Weill Cornell Medical Center. Id. ¶ 5.

In April 2019, Lerario notified Fink that she would soon be transitioning from male to female. Id. ¶ 67. Fink was allegedly unsympathetic and told Lerario to "keep your personal life personal." Id. ¶ 92. Fink also "ordered Dr. Lerario not to tell anyone else," id. ¶ 98, allegedly "refused" to allow Lerario to create a communication plan regarding her transition, id. ¶¶ 109-111, and rebuffed her requests to provide education to her coworkers on gender transitions, id. ¶¶ 123-124.[1]

On May 24, 2019, Lerario began presenting as female. Id. ¶ 120. Lerario alleges that her colleagues were "totally unprepared for [her] appearance as a female," and were "incredulous at Dr. Lerario's feminine presentation." Id. ¶¶ 121-122, 133. Lerario's colleagues laughed at her, mocked her, suggested that her gender transition was a joke, and asked

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, internal quotation marks, and citations in quoted texts.

her intrusive questions regarding her transition. Id. ¶ 134.
Despite Lerario's "emotional distress" at this response, "Dr.
Fink remained firm that there would be no education or training
provided to the faculty with regard to gender transitioning or
how to support a gender transitioning colleague." Id. ¶¶ 137,
140.

Over the next few months, Lerario continued to be subjected
to inappropriate statements, questions, jokes, stares, gestures,
and body language that made her feel extremely uncomfortable,
and she was frequently misgendered and mistreated by Fink and
others at NYP and Weill, causing her "acute emotional
suffering." Id. ¶¶ 141-43; see, e.g., id. ¶¶ 152-56, 176-207,
208-32, 233-53, 257-69, 270-78.

In September 2019, Lerario complained for the first time to
the defendants of her alleged harassment, mistreatment, and
hostile work environment. Id. ¶ 413. Shortly afterwards, Lerario
took leave in order to address the effects that the hostile
environment had on her mental health. Id. ¶¶ 77-78.

On January 20, 2020, Lerario returned to work "[a]fter
consultation with doctors and therapeutic intervention." Id.
¶ 80. Shortly afterwards, on January 29, 2020, Lerario met with
Fink to "state that every day she had difficulty returning to
work because she dreaded and feared further immersion in the
hostile work environment Dr. Fink had constructed." Id. ¶ 161.

4

Lerario "reiterated the components of the hostile environment that she confronted every day at work under Dr. Fink's supervision and leadership" and "informed Dr. Fink that she could not work under these conditions." Id. ¶ 162-163. In response to her continued complaints, Fink "replied that he wanted to remove Dr. Lerario's job responsibilities as medical director." Id. ¶ 165. Lerario interpreted this response as a threat of retaliation that would take "the form of [Fink's] causing or attempting to cause the revocation of her job responsibilities as medical director." Id. ¶ 168.

Lerario alleges that she continued to be misgendered and subjected to adverse comments and conduct by employees at Weill and NYP. See, e.g., id. ¶¶ 307-314, 315-328, 334. Lerario complained to Weill and NYP of these events by letters dated February 3, 2020 and February 26, 2020, "requesting that prompt and effective action be taken to address the hostile work environment." Id. ¶ 339.

On June 21, 2020, Lerario requested a second leave of absence from NYP and Weill. Id. ¶ 83. On July 20, 2020, Lerario received correspondence from NYP referring to the Neurology Department as her "former department." Id. ¶ 346. Lerario interpreted this to mean that NYP "no longer wishe[d] to employ [her] due to her gender identity." Id. Between July 20 and

August 9, 2020, Lerario requested that her case logs be provided
to her. Id. ¶ 348. These requests were ignored. Id. ¶ 349.

On August 10, 2020, Lerario brought an action against the
defendants. The defendants moved to dismiss those claims, which
this Court granted in part and denied in part. See ECF No. 71.
On April 26, 2022, Lerario filed a fourth amended complaint.
Cornell and Fink have now moved to dismiss Lerario's claim of
retaliation under the NYCHRL.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, it need not accept as true legal conclusions contained in the complaint. Id.

### III.

The NYCHRL broadly prohibits "retaliat[ion] or discriminat[ion] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). The Local Civil Rights Restoration Act of 2005 ("Restoration Act"), N.Y.C. Local Law 85, amended this section, providing that:

> The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, . . . or in a materially adverse change in the terms and conditions of employment, . . . provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

Restoration Act § 3. To state a claim for retaliation under the NYCHRL, then, the plaintiff needs to show only that the plaintiff "took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013).

The plaintiff alleges that she complained of her alleged mistreatment on several occasions, beginning in September 2019, but continuing on to January 29, 2020, February 3, 2020, and

February 26, 2020. Temporal proximity between protected conduct
and retaliation allows for an inference of causation. See, e.g.,
Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013)
("[E]ven without direct evidence of causation, a plaintiff can
indirectly establish a causal connection to support a . . .
retaliation claim by showing that the protected activity was
closely followed in time by the adverse employment action.").
However, where a plaintiff relies solely on temporal proximity
to prove causation, the proximity must be "very close." Clark
Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001). The
plaintiff first complained of her alleged mistreatment in
September 2019, before immediately taking leave and returning to
work on January 20, 2020. The first instance of retaliatory
action is alleged to have occurred on January 29, 2020, when
Fink threatened to "remove [the plaintiff's] job
responsibilities as medical director." Compl. ¶ 165.

The defendants argue that the temporal proximity between
these two events is too attenuated to support an inference of
causation because the events occurred more than 3 months apart.
The defendants cite cases claiming that the "outer limit" of
temporal proximity is "two months." Defs.' Memo., ECF No. 85, at
7; see, e.g., Moore v. Verizon, No. 13-cv-6467, 2016 WL 825001,
at *15 (S.D.N.Y. Feb. 5, 2016). However, these cases are
inapposite because the plaintiff was on a leave of absence

during the 3-month interval between her initial complaints and Fink's alleged retaliatory action, and Fink undertook the retaliatory action just nine days after her return. See Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (finding temporal proximity when "the adverse action occurred at the first actual opportunity to retaliate"). In fact, Fink took the retaliatory action immediately after Lerario engaged in protected conduct because Fink made the statement to Lerario immediately after her direct complaints to him on January 29. Accordingly, the temporal proximity between Fink's action and the plaintiff's protected activity was "very short." Clark Cnty., 532 U.S. at 273.

This is further supported by the plaintiff's allegations that she complained to Cornell's Human Resources department on January 9, 2020, while she was still on leave. Compl. ¶¶ 233-235. The plaintiff argues that upon her return, the department "retaliated at its first opportunity to do so, by withholding certificates showing her employment status, refusing to communicate with her regarding her benefits, and cutting off her access to email needed for her ongoing research." Pl.'s Opp., ECF No. 89, at 5. The plaintiff does not plead facts as to the specific timing of these alleged retaliatory actions in the Complaint, except for the suspension of email access, which occurred on April 28, 2021. See Compl. ¶¶ 420, 427-428, 431.

However, notwithstanding this temporal indeterminacy, the fact of these alleged retaliatory acts themselves indicates that Fink's threat was not isolated. Other alleged facts, such as the plaintiff being "blackballed from all academic programs in New York City as a result of statements by Defendants' personnel," id. ¶ 439, further support the plaintiff's claim of retaliation.

The defendant argues that Fink's action was non-retaliatory because it was a mere threat that was not carried out and therefore did not disadvantage her. But a "materially adverse change in the terms and conditions of employment" is the standard for Title VII discrimination claims, not NYCHRL retaliation claims. See, e.g., Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85, 90 (2d Cir. 2015) (noting further that even "in the context of a Title VII retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination" and that "[t]his definition covers a broader range of conduct than . . . claims of discrimination under Title VII"). The NYCHRL only requires the plaintiff to show that the employer "engaged in conduct that was reasonably likely to deter a person from engaging in [protected] action." Mihalik, 715 F.3d at 112. It is plausible that a reasonable person would be deterred from complaining of harassment if threatened with termination by a supervisor. Accordingly, the plaintiff has

alleged sufficiently that Fink's threat of removing the
plaintiff from her job responsibilities was a retaliatory action
under the NYCHRL.

Because Fink allegedly engaged in conduct constituting
retaliatory action, and because such conduct was in very close
temporal proximity to the plaintiff's participation in a
protected activity, the plaintiff has plausibly alleged a claim
of retaliation under the NYCHRL. The plaintiff's claim is
buttressed by other facts alleged indicating that Fink's conduct
was not an isolated act of retaliation. Accordingly, the motion
to dismiss is **denied**.

### CONCLUSION

The Court has considered all of the arguments of the
parties. To the extent not specifically addressed above, the
arguments are either moot or without merit. For the foregoing
reasons, the motion to dismiss by Cornell and Fink is **denied**.
The Clerk is directed to close all pending motions.

SO ORDERED.

Dated:     New York, New York
           October 18, 2022

John G. Koeltl
United States District Judge