UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

DR. MACKENZIE LERARIO,

                    Plaintiff,                    20-cv-6295 (JGK)

          - against -                             MEMORANDUM
                                                  OPINION & ORDER
NEWYORK-PRESBYTERIAN/QUEENS, ET AL.,

                    Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

      Dr. Mackenzie Lerario, a vascular neurologist and a
transgender woman, alleges that the defendants -- NewYork-
Presbyterian/Queens ("NYP"), Cornell University ("Cornell"), and
Dr. Matthew Fink -- discriminated and retaliated against Dr.
Lerario and created a hostile work environment when Dr. Lerario
was transitioning from male to female in 2019 and early 2020. In
August 2020, while on long-term disability leave from Cornell,
Dr. Lerario filed this action. ECF No. 1.[1]

      Dr. Lerario, who remains an inactive employee of Cornell,
now moves pursuant to Federal Rule of Civil Procedure 65 for a
preliminary injunction requiring Cornell to restore Dr. Lerario
to active employment status pending the conclusion of this
litigation and "to provide a period of retraining and

────────────────

[1] When the fourth amended complaint was filed, Dr. Lerario used she/her
pronouns. ECF No. 87; see also Lerario v. NewYork-Presbyterian/Queens,
No. 20-cv-6295, 2022 WL 1065060, at *1 (S.D.N.Y. Oct. 18, 2022). Dr.
Lerario's filings on this motion use they/them pronouns.

supervision to ensure their skills are consistent with the skills required of physicians in their field at Weill Cornell, until this Court enters final judgment." ECF No. 112. Because Dr. Lerario has not shown entitlement to the "extraordinary remedy" of a preliminary injunction, Monserrate v. New York State Senate, 599 F.3d 148, 154 (2d Cir. 2010), the motion for a preliminary injunction is **denied.**

**I.**

**A.**

The following facts, drawn from the complaint and the parties' affidavits on this motion, constitute the Court's findings of fact. See Park Irmat Drug Corp. v. Optumrx, Inc., 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence.").[2]

Dr. Lerario is a board-certified neurologist and vascular neurologist. Lerario Decl., ECF No. 114, ¶ 37. Dr. Lerario is an expert in the research, development, and operation of mobile stroke treatment units ("MSTUs"), which provide immediate, specialized care to stroke victims. Id. ¶¶ 37-40, 65-68. After earning a medical degree from the University of Pennsylvania

---

[2] Unless otherwise noted, this Memorandum Opinion & Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

Medical School in 2010, Dr. Lerario completed an internship, residency, and vascular neurology fellowship at NewYork-Presbyterian Hospital/Weill Cornell Medical Center. Id. ¶¶ 42-45. In June 2015, Dr. Lerario was appointed as an attending physician in the Neurology Department at NYP and as an Assistant Professor of Clinical Neurology at Weill Cornell Medical College ("Weill"). Id. ¶ 46. The next year, Dr. Lerario became the Director of NYP's MSTU program, which by January 2018 included three MSTU units -- one each in Manhattan, Brooklyn, and Queens. Id. ¶ 48. Dr. Lerario has been the co-principal investigator in 11 research studies on strokes and the principal investigator in one such study and has co-authored more than 40 peer-reviewed original research publications, 40 peer-reviewed abstracts and presentations, and a medical textbook on cerebrovascular disease. Id. ¶¶ 51-53.

In May 2019, Dr. Lerario began presenting as female. Compl., ECF No. 87, ¶ 120. The complaint's central allegations are that, over the next several months, Dr. Lerario's colleagues, including Dr. Fink (the Chair of Neurology at Weill, the Neurologist-in-Chief at NYP, and Dr. Lerario's supervisor), subjected Dr. Lerario to inappropriate statements, questions, jokes, stare, gestures, and body language that caused "acute emotional suffering" during Dr. Lerario's gender transition. See id. ¶¶ 5, 61-62, 92-143. The defendants dispute this. Opposing

3

this motion for a preliminary injunction, they attach emails that, according to the defendants, show that Dr. Fink and others supported Dr. Lerario's transition. See Kramer Decl., Exs. 1-4, ECF Nos. 121-1 to 121-4. The defendants also attach a June 2019 draft of an NYP publication about Dr. Lerario's transition, in which Dr. Lerario was quoted as saying that Dr. Fink was "immediately supportive and accepting and said, 'I have your back.' And he did." Kramer Decl., Ex. 7, ECF No. 121-7. And the defendants attest that, in July 2019, Dr. Lerario referred to Dr. Fink and another colleague as "examples of healthcare leaders supportive of the LGBTQ community during my coming out process" and thanked them for their "amazing levels of support." Kramer Decl., Ex. 8, ECF No. 121-8.

In September 2019, Dr. Lerario took a leave of absence to address mental health issues. Compl. ¶¶ 77-78. Although Dr. Lerario briefly returned to work in January 2020, Dr. Lerario soon took a second leave of absence that continues to this day. Id. ¶¶ 80-85. Dr. Lerario now alleges that this leave was caused by "the mental health disability that formed as the result of Dr. Lerario's immersion in a hostile work environment." Id. ¶ 85. The defendants argue that Dr. Lerario took the leave of absence independent of any workplace concerns. They attach to their opposition papers a January 27, 2020, disability leave form, signed by Dr. Lerario's physician, in which the primary

diagnosis was described as "Major depressive order" and the answer "No" was given in response to a question asking whether Dr. Lerario's condition was "work related." Kramer Decl., Ex. 20, ECF No. 121-20.

In August 2020, Dr. Lerario filed this action. ECF No. 1. After several amendments to the complaint and two motions to dismiss, the operative fourth amended complaint was filed on April 26, 2022. ECF No. 87. The complaint asserts claims for hostile work environment, retaliation, and disparate treatment based on sex under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), as well as for hostile work environment based on disability under the NYSHRL and the NYCHRL. Id. Dr. Lerario seeks, among other relief, money damages and reinstatement to Dr. Lerario's prior position at Cornell. Id., Prayer for Relief. After the Court denied a partial motion to dismiss the complaint in October 2022, see Lerario v. NewYork-Presbyterian/Queens, No. 20-cv-6295, 2022 WL 10652060, at *1 (S.D.N.Y. Oct. 18, 2022), the parties began fact discovery, although the parties represent that no depositions have yet been taken. Under the current scheduling order, all discovery shall be completed by January 31, 2024, with dispositive motions due February 18, 2024. ECF Nos. 101, 131.

**B.**

This motion for a preliminary injunction concerns events that allegedly occurred after those alleged in the complaint. After Dr. Lerario's long-term disability leave began in 2020, Dr. Lerario obtained insurance coverage under Cornell's long-term disability ("LTD") policy. Lerario Decl. ¶ 18; Lerario Decl., Ex. E, ECF No. 114-8. At some point, Dr. Lerario became an employee on inactive status. Lerario Decl. ¶¶ 1, 64. Over the next few years, Dr. Lerario sought part-time and temporary positions at institutions other than Cornell and spoke with potential employers about full-time opportunities. Id. ¶ 10. Nothing worked out. Id. ¶ 11. A few potential employers told Dr. Lerario that they could not proceed because of the litigation; others said that the gap in clinical practice was a problem. See id. ¶¶ 10-11, 19-20, 23-25, 28-29, 34. In 2021, Dr. Lerario was offered, but turned down, a nonclinical adjunct faculty position at New York Medical College and a temporary clinical position at SUNY Downstate Medical Center. Id. ¶¶ 11-12. Dr. Lerario attests the SUNY Downstate position "would not cover benefits I needed for my ongoing health concerns" and "would not involve my skills and expertise in MSTUs." Id. ¶ 12. Nevertheless, Dr. Lerario continued to participate in research projects. Id. ¶ 21. Dr. Lerario also began a program to obtain a Master's in Social Work

at Fordham and was accepted into the American Academy of
Neurology's "Emerging Leaders Program." Id. ¶¶ 22, 26-27.

During this time, Dr. Lerario did not seek reinstatement to
active clinical work at Cornell. Dr. Fink attests that, in late
January 2020, Dr. Lerario expressed the desire not to continue
working as a clinician and "preferred to pursue an
administrative or non-patient-facing role, possibly in
connection with starting a program focused on transgender
health." Fink Decl., ECF No. 120, ¶ 13. Dr. Lerario has not
practiced clinical medicine after 2019. See Lerario Decl., Ex.
F, ECF No. 114-6; Fink Decl. ¶ 20.

In February 2023, Dr. Lerario's LTD coverage ended. See ECF
No. 110. In April 2023, Dr. Lerario notified Cornell of Dr.
Lerario's desire to return to work, citing improved mental
health and Dr. Lerario's discovery of resources on the Weill
Cornell website concerning gender transition and gender
inclusive pronouns, which suggested to Dr. Lerario that "the
hostile environment ha[d] partially abated." Lerario
Decl. ¶¶ 59-60. Lerario later provided Cornell with a letter
dated May 16, 2023, from a psychiatrist, Dr. Gary Schultheis,
attesting to Dr. Lerario's mental fitness to return to work.
Id. ¶¶ 59, 61; Lerario Decl., Ex. H, ECF No. 114-8.

According to the defendants, this was the first time that
Dr. Lerario sought to resume clinical work at Cornell. Fink

Decl. ¶ 14. Cornell also asserts that its antidiscrimination policy is substantially the same as it was during Dr. Lerario's active employment and that Cornell has historically supported initiatives around transgender health and wellbeing. See Kramer Decl., Exs. 23, 24, ECF Nos. 121-23 to -24. Six of the eight transgender resources on the Weill Cornell website that Dr. Lerario points to were issued between January and June 2020. See Weiss Reply Decl., Exs. A-H, ECF No. 126-1 to 126-8.

On May 26, 2023, Dr. Lerario received a notice from Cornell's health benefit plan, titled "IMPORTANT INFORMATION: COBRA Continuation Coverage," notifying Dr. Lerario of a "[t]ermination that occurred on 05/31/2023" and advising that if Dr. Lerario did not elect to continue health insurance through the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Dr. Lerario's insurance coverage would end on June 1, 2023. Lerario Decl., Ex. A., ECF No. 107-3.[3] The same day that Dr. Lerario received this notice, Dr. Lerario moved before this Court for a temporary restraining order and a preliminary injunction to prohibit Cornell "from taking any steps to terminate [Dr. Lerario's] employment" and to require Cornell "to

---

[3] Cornell represents that Dr. Lerario's LTD coverage "ended on February 15, 2023, and, due to an administrative delay, Cornell provided an additional three months of health benefits before following its usual process to provide notice of the availability of COBRA benefits." ECF No. 110.

reinstate Dr. Lerario to their position" pending this litigation. ECF Nos. 105, 106. Responding to Dr. Lerario's submission, Cornell and Dr. Fink represented that Dr. Lerario remained an employee on inactive status and that "[t]he only change to the status quo that will occur [on] May 31st[] is that Plaintiff's health benefits will no longer be provided and paid for by Cornell University." ECF No. 110 at 1. At a hearing on May 30, 2023, the Court declined to prevent Cornell from transitioning Dr. Lerario to COBRA coverage. The Court allowed Dr. Lerario to renew the motion for a preliminary injunction by June 5, 2023. ECF No. 111.

On June 6, 2023, Dr. Lerario filed the current motion for a preliminary injunction. ECF No. 112. Dr. Lerario now seeks to require Cornell to "make arrangements to restore [Dr. Lerario] to 'active' status from the 'inactive' status under which they are currently listed, and to provide a period of retraining and supervision to ensure their skills are consistent with the skills required of physicians in their field at Weill Cornell." Id. On July 18, 2023, the Court heard oral argument on the renewed motion for a preliminary injunction.[4]

## II.

The following constitutes the Court's conclusions of law.

---

[4] Because the preliminary injunction is only directed against Cornell, only Cornell and Dr. Fink have opposed the motion.

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007), and it "should not be granted unless the movant, by a clear showing, carries the burden of persuasion," Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

The parties dispute the burden that Dr. Lerario carries as the movant. Ordinarily, to meet the "heavy burden in seeking a preliminary injunction," Woodstock Ventures, LC v. Woodstock Roots LLC, 837 F. App'x 837, 838 (2d Cir. 2021), a movant must establish "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest," New York el rex. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015). However, an even higher standard applies when (1) a "mandatory" injunction, rather than a "prohibitory" injunction, is sought, or (2) where the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." Id. When either condition is met, "the movant must show a clear or substantial likelihood of success on the merits and make a strong showing of

10

irreparable harm, in addition to showing that the preliminary injunction is in the public interest." Id. (emphases added). Because both conditions are met in this case, the heightened standard applies.

Contrary to Dr. Lerario's contention, the injunction sought is mandatory, not prohibitory. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 36 (2d Cir. 2018). Dr. Lerario seeks to change the status quo. Dr. Lerario has been on inactive status for the past several years, and the parties agree there is no imminent change to that status. Moreover, Dr. Lerario has not practiced clinical medicine since September 2019, almost a year before this action was filed. Now, however, Dr. Lerario seeks to require Cornell to reinstate Dr. Lerario to active status from inactive status and to compel Cornell staff to retrain Dr. Lerario. Dr. Fink estimates that it would take 50% of a faculty member's time and 50% of a clinician's time for at least six months to retrain Dr. Lerario. Fink Decl. ¶¶ 20, 22. Dr. Lerario responds that Dr. Lerario would require only "3 months of 20% indirectly supervised clinical practice" to resume independent practice. Lerario Reply Decl., ECF No. 125, ¶ 6. In either event, the requested injunction would "compel[] affirmative action rather than merely prohibit[] certain

11

conduct" by Cornell. See JLM Couture, Inc. v. Gutman, 24 F.4th
785, 799 n.16 (2d Cir. 2022). The injunction therefore is
mandatory, and the heightened standard applies.[5]

The heightened standard also applies because the injunction
would provide Dr. Lerario with "substantially all the relief
sought and that relief cannot be undone even if the defendant[s]
prevail[] at a trial on the merits." See Actavis PLC, 787 F.3d
at 650. Through this litigation, Dr. Lerario principally seeks
reinstatement to Dr. Lerario's prior clinical position at
Cornell. See Compl., Prayer for Relief. Issuing the preliminary
injunction would grant Dr. Lerario that ultimate relief. And by
directing Cornell staff to set aside their own clinical
practices and teaching obligations to retrain Dr. Lerario, the

---

[5] This Court's decision in Bionpharma v. CoreRx, Inc., 582 F. Supp. 3d
167 (S.D.N.Y. 2022), on which Dr. Lerario relies, is not to the
contrary. The plaintiff in Bionpharma, a pharmaceutical company, sued
a drug manufacturer for breach of an agreement under which the
defendant was required to provide the plaintiff with a generic drug
used to treat children's cardiac conditions. Id. at 170. The plaintiff
immediately moved for a preliminary injunction to compel the defendant
to continue to supply the plaintiff with the generic drug in
accordance with the agreement. Id. In granting the motion for a
preliminary injunction, the Court concluded that the heightened
standard did not apply because the injunction sought was prohibitory:
Rather than "altering the status quo by doing more than is required by
the Agreement," the injunction sought "would maintain the situation
that would prevail if the contract were properly performed." Id. at
174. Unlike in Bionpharma, Dr. Lerario asks to be restored to a
position Dr. Lerario has not held in several years and to have Cornell
take significant affirmative steps to retrain Dr. Lerario in clinical
work. These requests would not "maintain the situation that would
prevail" absent this litigation, but instead would require Cornell to
"do more than is required by" any employment arrangement Cornell and
Dr. Lerario once had. Cf. id.

injunction sought would grant Dr. Lerario the requested relief in a manner that could not be undone even if the defendants prevailed at trial.

Accordingly, Dr. Lerario must meet the heightened standard on this preliminary injunction. However, this conclusion is "of little import in this case" because, as a review of the preliminary injunction factors shows, Dr. Lerario is not entitled to a preliminary injunction under either the ordinary or the heightened standard. Cf. Actavis PLC, 787 F.3d at 651.

## A. Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009). A movant must show that, absent a preliminary injunction, the movant "will suffer an injury that is neither remote nor speculative, but actual and imminent and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." Moore v. Consol. Edison Co. of New York, Inc., 409 F.3d 506, 510 (2d Cir. 2005). A movant seeking a

mandatory injunction must make a "strong showing" of irreparable harm. Actavis PLC, 787 F.3d at 650.[6]

Dr. Lerario asserts that without "appropriate training and supervision" by Cornell, Dr. Lerario will see the "immediate and irreparable end of" Dr. Lerario's medical career, will suffer "continued loss of skills" in Dr. Lerario's medical field, and will "have to report the termination [of employment by Cornell] to the New York licensing authorities and the National Practitioner Data Bank, which will create a permanent black mark on [Dr. Lerario's] reputation." See Pl.'s Memo., ECF No. 113, at 15-16. Dr. Lerario also asserts that money damages will be difficult to ascertain and that the public will suffer if Dr. Lerario continues to be unable to work with the Mobile Stroke Treatment Units. Id.

These alleged harms, though serious, do not show -- let alone make a strong showing -- that Dr. Lerario is likely to suffer irreparable harm absent immediate reinstatement and retraining by Cornell. Dr. Lerario has not shown that the end of Dr. Lerario's medical career is imminent. If Dr. Lerario

_____

[6] Contrary to Dr. Lerario's assertion, see Pl.'s Memo, ECF No. 113, at 4 n.2, a showing of likely irreparable harm is a requirement, not a noncompulsory "consideration," in the preliminary injunction analysis. See Winter, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief . . . ." (emphasis added)).

succeeds in this lawsuit, reinstatement at Cornell may be ordered. See Serricchio v. Wachovia Sec. LLC, 658 F.3d 169, 193 (2d Cir. 2011) ("[O]ur Circuit favors reinstatement as a remedy in employment cases generally."). Similarly, Dr. Lerario has not explained what will have to be reported to the New York licensing authorities if the injunction is not issued. Cornell represents that because Dr. Lerario's faculty appointment has not been terminated, "[n]othing has changed in recent months that would create a newly reportable event" to any medical licensing authorities. Defs.' Opp., ECF No. 119, at 12. Dr. Lerario appears to agree. Pl.'s Reply Memo., ECF No. 124, at 5 ("[T]his is a case of a current employee[.]"). Meanwhile, Dr. Lerario has presented no evidence that, if Dr. Lerario ultimately prevails, money damages will be difficult to ascertain. Even if they were, reinstatement remains available as a remedy following a trial. If reinstatement is not feasible and Dr. Lerario is unable to find another job, the Court has discretion to order front pay, Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277, 286 (2d Cir. 2011), or to fashion "any other equitable relief as the court deems appropriate," 42 U.S.C. § 2000e-5(g)(1).[7]

---

[7] For example, reinstatement may not be feasible when (1) the plaintiff's position has been changed or eliminated, (2) reinstatement would displace innocent third parties, or (3) the relationship between the parties is too damaged. Reiter v. Metro. Transp. Auth. of New York, No. 01-cv-2762, 2003 WL 22271223, at *13 (S.D.N.Y. Sept. 30,

Dr. Lerario's concern about the continued atrophy of medical skills is a weighty consideration. Dr. Lerario is an accomplished physician, and the desire to return to clinical practice at Cornell is understandable. Nevertheless, courts considering physicians' requests for temporary reinstatement on preliminary injunctions have consistently rejected the risk of skills atrophy as irreparable. See, e.g., Katz v. Georgetown Univ., No. 00-cv-2412, 2000 WL 33539394, at *5-7 (D.D.C. Nov. 6, 2000) (denying physician's request for reinstatement on the basis of alleged harms of "impaired ability to maintain surgical skills," "increased difficulty in finding comparable employment due to a break in his career," "impaired knowledge base," and "erosion of his client base and corresponding diminution of professional reputation," where the benefit to the physician did not "likely outweigh the burden imposed upon" the defendants), aff'd, 246 F.3d 685 (D.C. Cir. 2001); Balaklaw v. Lovell, No. 92-cv-817, 1992 WL 310790, at *3 (N.D.N.Y. Oct. 16, 1992) (no irreparable harm due to potential atrophy of physician's skills nor alleged harm to public due to loss of physician's services).[8]

_____

2003). It is premature to determine at this stage whether reinstatement could be feasible if Dr. Lerario ultimately prevails.

[8] Dr. Lerario argues that district courts "have ordered preliminary injunctive relief in employment cases where something more than the employment itself is at stake." Pl.'s Memo. at 14. But both cases Dr. Lerario cites to support that proposition are inapposite. Yeh v. Prairie E&L Management, LLC involved an alleged breach of a stock transfer agreement that would have resulted in the termination of a

16

In this case, Dr. Lerario has failed to show that any
incremental atrophy of skills from now until the end of this
litigation would be immediate and irreparable. Dr. Lerario has
not practiced clinical medicine in almost four years, and it is
possible that, at the end of this case, reinstatement at Cornell
could be ordered in a manner that could reverse the atrophy of
skills. Accordingly, Dr. Lerario has not shown that this alleged
harm "cannot be remedied if a court waits until the end of trial
to resolve the harm." Freedom Holdings, Inc., 408 F.3d at 114.

---

physician's employment. No. 20-cv-3124, 2020 WL 6930519, at *7 (C.D.
Ill. Aug. 28, 2020). The court found that the physician was likely to
succeed on the merits of her claim that the defendant was not
authorized to terminate the parties' agreement, and that irreparable
harm would "ensue in the absence of an injunction" because the
physician had "lost some patients" during her temporary time away from
her practice and "was not able to perform a number of previously
scheduled, highly profitable LASIK surgeries." Id. In contrast, Dr.
Lerario has not demonstrated a likelihood of success on the merits;
and, unlike the physician in Yeh, Dr. Lerario already has been away
from clinical practice for nearly four years.

Robie v. Price concerned the potential loss of Medicare billing
privileges. No. 17-cv-3089, 2017 WL 3188572, at *7 (S.D. W. Va. July
26, 2017). The court concluded that the plaintiff physician would
"suffer substantial financial and reputational harm to his career if
his Medicare billing privileges [we]re revoked," and that a
preliminary injunction would be in the public interest because Dr.
Robie was "one of only two family practice physicians who provide home
visits to" 121 homebound patients who are "some of the most vulnerable
citizens in West Virginia in Putnam and western Kanawha counties." Id.
at *7-8. In that case, Robie sought relief before any privileges were
revoked and while he was still actively providing clinical services.
Here, in contrast, Dr. Lerario has no current patients and no clinical
or hospital duties. And although Dr. Lerario has provided an important
public service by working with stroke victims, Dr. Lerario does not
contend that no other physicians in New York City perform this work.

The timing of this motion also undermines Dr. Lerario's argument for irreparable harm. Unreasonable delay may "preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995). "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." Gidatex, S.r.L. v. Campaniello Imps., Ltd., 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998). Before April 2023, however, Dr. Lerario neither asked Cornell to return to clinical practice nor sought a preliminary injunction from this Court to mandate Cornell to restore Dr. Lerario to active status, although Dr. Lerario sought employment at other institutions. Lerario Decl. ¶¶ 11-12. And although Dr. Lerario asserts that Cornell is far more accommodating of transgender employees today than when Dr. Lerario was transitioning, six of the eight resources on the Weill Cornell website that allegedly show a "substantial improvement" in Cornell's treatment of transgender employees have been publicly available since June 2020. See Pl.'s Reply Br., ECF No. 124, at 7-8; Weiss Reply Decl., Exs. A-H, ECF No. 126-1 to 126-8. The timing of Dr. Lerario's request for immediate reinstatement thus undermines Dr. Lerario's contention

18

that immediate and irreparable harm will result without the requested injunction. See, e.g., Joshi v. Trs. of Columbia Univ. in City of N.Y., No. 17-cv-4112, 2020 WL 5125435, at *5 (S.D.N.Y. Aug. 31, 2020) ("Dr. Joshi did not bring this preliminary injunction motion until July 22, 2020, seven months after being definitively told that his lab was to close on June 30, 2020 if he could not secure external funding, and over three years after he alleged that the Department was threatening to close his lab.").

Accordingly, Dr. Lerario has not shown that, absent the requested preliminary injunction, Dr. Lerario will suffer irreparable harm.

**B. Merits**

Dr. Lerario also has failed to meet either the ordinary standard or the heightened standard with respect to showing the merits of Dr. Lerario's claims. A movant must present evidence showing "either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party." N. Am. Soccer League, 883 F.3d at 37. The evidence "should be enough to allow a court to conclude that the plaintiff is likely to prove the relevant facts by a preponderance of the evidence." Herbert v. Sanfeliz, No. 22-cv-4299, 2022 WL 3755305, at *2 (S.D.N.Y. Aug. 30, 2022). "Likelihood sets, of course, a higher standard than

19

'possibility.'" <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 79 (2d Cir. 1990). Under the heightened standard, the movant must show "a clear or substantial likelihood of success on the merits." <u>N. Am. Soccer League</u>, 883 F.3d at 37.

Dr. Lerario has not shown a likelihood of success, let alone a clear or substantial likelihood of success, on the merits of the claims in the complaint. It is true that Dr. Lerario has "largely prevailed on more than one motion to dismiss." Pl.'s Memo. at 17. In February 2022, the Court granted in part and denied in part a motion to dismiss the second amended complaint, allowing all of Dr. Lerario's claims to proceed except those for hostile work environment and failure to accommodate under the Americans with Disabilities Act, failure to accommodate under the NYSHRL, and retaliation and failure to accommodate under the NYCHRL. ECF No. 71; <u>see also</u> Second Am. Compl., ECF No. 38. Then, in October 2022, the Court denied a motion by Cornell and Dr. Fink to dismiss Dr. Lerario's renewed retaliation claim under the NYCHRL. <u>Lerario</u>, 2022 WL 10652060, at *1.

However, those decisions do not show that Dr. Lerario is likely to succeed on the merits of the claims. The decisions establish only that, taking as true the allegations in the various complaints, Dr. Lerario stated claims to relief that were plausible on their face. <u>See Bell Atl. Corp. v. Twombly</u>,

20

550 U.S. 544, 570 (2007); see also Goldman v. Belden, 754 F.2d
1059, 1067 (2d Cir. 1985) (explaining that the Court's function
on a motion to dismiss is "not to weigh the evidence that might
be presented at a trial but merely to determine whether the
complaint itself is legally sufficient."). Discovery and the
evidence at a trial may -- or may not -- bear out the
allegations in Dr. Lerario's complaint. But nothing in Dr.
Lerario's preliminary injunction papers allows the Court to
conclude that Dr. Lerario is likely or clearly likely to prevail
on a full record. To the contrary, the motion for a preliminary
injunction does not concern the events described in the
complaint. While the complaint centers on the defendants'
alleged conduct in 2019 and 2020, Dr. Lerario's argument on this
motion appears to be that Dr. Lerario was wrongfully
"terminated" in May 2023, that Cornell has failed to offer a
legitimate, non-discriminatory basis for that termination, and
that Cornell's policy is to "terminate" any employee who takes
long-term-disability leave. See Pl.'s Memo. at 18. But because
Dr. Lerario has not pleaded this theory of disability
discrimination in the complaint (nor could there be such a
claim, given how recent the events are), these assertions shed
no additional light on the likelihood that Dr. Lerario will
prevail on the claims in the complaint. Thus, Dr. Lerario has
not met the burden on this motion for a preliminary injunction

to show a likelihood, as opposed to merely a possibility, of success on the merits. See JSG Trading Corp., 917 F.2d at 79; see also, e.g., Williams v. Rosenblatt Secs. Inc., 136 F. Supp. 3d 593, 616 n.11 (S.D.N.Y. 2015) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").

Dr. Lerario likewise has not shown "both serious questions on the merits and a balance of hardships decidedly favoring" Dr. Lerario. See N. Am. Soccer League, 883 F.3d at 37. Under this standard, a movant's overall burden "is no lighter than the one it bears under the likelihood of success standard," because the movant "must not only show that there are serious questions going to the merits, but must additionally establish that the balance of hardships tips decidedly in its favor." Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).

Under this standard, Dr. Lerario has not met the additional burden of showing that the balance of hardships tips decidedly in Dr. Lerario's favor. The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Dr. Lerario must demonstrate that the harm Dr. Lerario "would suffer

absent the relief sought is substantially greater than the harm the defendants would suffer if the injunction were granted." See Joshi, 2020 WL 5125435, at *7. On the one hand, declining to issue the requested injunction could lead to the continued atrophy of Dr. Lerario's medical skills. Although this is a serious concern, it is not clear how much declining to issue the injunction at this stage would contribute to this harm, given the length of time that already has passed since Dr. Lerario last practiced clinical medicine. On the other hand, issuing Dr. Lerario's requested injunction would be certain to burden Cornell. It would require Cornell to spend substantial resources retraining Dr. Lerario until Dr. Lerario regains their old skill level. See Lerario Reply Decl. ¶ 6; Fink Decl. ¶ 20. During that period, the Cornell employees retraining Dr. Lerario would have less time to maintain their own clinical practices and teaching obligations. On balance, Dr. Lerario has not shown that the incremental harm to Dr. Lerario if the injunction is not issued substantially outweighs the hardship to Cornell if the injunction is issued.

### C. Public Interest

Finally, Dr. Lerario has not shown that the requested preliminary injunction "is in the public interest." Actavis PLC, 787 F.3d at 650. Indeed, Dr. Lerario does not specifically argue, either in the moving papers or the reply papers, that the

public interest would be served by the preliminary injunction sought. Dr. Lerario does note that it would be "to the detriment of the members of the public were Dr. Lerario to lose their career as a board-certified vascular neurologist with expertise in MSTUs." Pl.'s Memo. at 11. However, as discussed above, Dr. Lerario has not demonstrated that Dr. Lerario's career will be lost absent a preliminary injunction. On the other hand, issuing the injunction would impose a substantial burden on Cornell, which would be required to reallocate significant resources to retraining Dr. Lerario. That burden would fall not only on the Cornell faculty who would be tasked with retraining Dr. Lerario, but also on the patients and other physicians they otherwise would be able to treat and train. Accordingly, Dr. Lerario has failed to show that the requested injunction would serve the public interest.

*** 

For the reasons explained above, Dr. Lerario has not met the high burden, under either the ordinary standard or the heightened standard, to show an entitlement to the "extraordinary remedy" of a preliminary injunction requiring Cornell to reinstate and retrain Dr. Lerario pending the conclusion of this litigation. See Monserrate, 599 F.3d at 154. Nevertheless, the parties are reminded of their obligation to work together in good faith to meet the deadlines in the

24

scheduling order, so that this litigation can be resolved expeditiously.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the plaintiff's motion for a preliminary injunction is **denied.**

The Clerk is respectfully directed to close ECF Nos. 105 and 112.

**SO ORDERED.**

Dated:    New York, New York
          July 28, 2023

                                    John G. Koeltl
                              United States District Judge